UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TIFFANY DUKE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-13873** |
| **BP EXPLORATION & PRODUCTION INC, et al.** | **SECTION: "T"(5)** |

## ORDER

Before the Court are three motions filed by Defendants, BP Exploration & Production Inc. and BP America Production Company (collectively "BP"), namely two *Daubert Motions to Exclude the Causation Testimony of Plaintiff's Experts, Dr. Kathleen Burns and Dr. Michael Meshad* and a *Motion for Summary Judgment*.[1] Plaintiff Vernon Baggett filed a response to each motion.[2] The Court considers each motion in turn.

## BACKGROUND

In 2010, the Deepwater Horizon oil rig exploded, causing a massive oil spill in the Gulf of Mexico. Following the incident, hundreds of individuals brought "claims for personal injury and wrongful death due to exposure to oil and/or other chemicals used during the oil spill response (e.g., dispersant)."[3] Originally, these matters were part of a multidistrict litigation. However, after the Court approved the Deepwater Horizon Medical Benefits Class Action Settlement Agreement, many individuals, known as "B3 plaintiffs," either opted out of the class action settlement

---

[1] R. Docs. 30, 31, 32.
[2] R. Docs. 37. Defendants have also filed a reply. R. Doc. 41.
[3] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *10 (E.D. La. Apr. 1, 2021).

1

agreement or were excluded from its class definition.[4] Now, those plaintiffs have brought suit individually. To recover outside of the settlement framework, "B3 plaintiffs must prove that the legal cause of [their] claimed injury or illness is exposure to oil or other chemicals used during the response."[5] This "require[s] an individualized inquiry" and is typically the "make-or-break issue of many B3 cases."[6]

Tiffany Duke, one of the B3 plaintiffs, unlike other B3 plaintiffs was not employed in the oil spill response.[7] Instead, Ms. Duke avers exposure to toxic hydrocarbons while living in Orange Beach, Alabama.[8] Ms. Duke maintains that the exposure caused a recurrence of her pre-existing porphyria cutanea tarda (PCT), a rare skin condition, she maintains was in remission from 2007 until the summer of 2010 following the oil spill."[9] To prove her injuries were caused by exposure to contaminants from the spill, Ms. Duke relies on the expert testimony of Dr. Kathleen Burns and Dr. Michael Meshad. Kathleen Burns, Ph.D., is proffered as an expert in toxicology and epidemiology to offer an opinion as to general causation. Burns earned her Ph.D. in Public Health from the University of Illinois Medical Center in Chicago.[10] Burns has worked as a toxicologist for over 35 years and has published books on toxicology and risk assessment.[11] Burns issued a report in this case evaluating a "potential relationship between exposure to chemical in crude oil contaminated air and other media as a result of the crude oil spill from the Macondo Well in the Gulf of Mexico on April 20, 2010 ("BP Oil Spill"), and the exacerbation of porphyria cutanea tara

---

[4] *Id.* at *2, *10, n.3.
[5] 2021 WL 6053613, at *11.
[6] *Id.*
[7] R. Doc. 1.
[8] *Id*.
[9] *Id.*
[10] R. Doc. 30-2.
[11] *Id.*

(PCT)."[12] Absent from Burns's report is any mention of a particular plaintiff. Burns's report also does not identify a harmful level of exposure to a particular chemical necessary to cause the complained of health effects of Ms. Duke.

Michael Meshad, M.D. is Ms. Duke's former treating physician. He did not issue an expert report, but per Ms. Duke's expert disclosures, Dr. Meshad plans to offer an opinion as to specific causation. Dr. Meshad is a physician at the Southern Cancer Center in Daphne, Alabama who treated Ms. Duke in 2010.[13] The expert disclosure states Dr. Meshad will "testify that Plaintiff suffered a severe recurrence of PCT in the summer of 2010 as a result of her proximity to hydrocarbons from the BP Oil Spill that were in and around the vicinity of where Plaintiff lived."[14] In addition to the expert disclosure per Federal Rules of Civil Procedure Rule 26, two letters penned by Dr. Meshad in 2010 are offered as a discussion of Dr. Meshad's causation opinion.[15] Neither letter causally relates Ms. Duke's PCT recurrence to hydrocarbon exposure, but rather that the recurrence "coincided" with exposure to such hydrocarbons.[16]

In the present motions, BP asks this Court to exclude the testimony of Drs. Burns and Meshad and, due to the lack of causation evidence, dismiss Ms. Duke's claims. The Court will address each motion in turn.

## LAW & ANALYSIS

As a preliminary matter, the Court will address the *Motion to Extend Submission Date* and *Motion for Expedited Hearing* filed by Plaintiff.[17] Both motions were filed in June 2022 seeking

---

[12] R. Doc. 30-2 at 3.
[13] R. Doc. 37-4.
[14] R. Doc. 31-2.
[15] R. Doc. 31-3.
[16] *Id.*
[17] R. Docs. 33, 34.

3

an extension of submission date for the Defendants' *Daubert* motions and summary judgment motions from July 6, 2022, to July 20, 2022. Since the filing of these motions, the Court continued the trial in this matter without date pending consideration of the Defendants' motions. While Plaintiff's motions were not ruled on before the proposed submission date, Plaintiff has not sought leave to file supplemental oppositions to any of the Defendants' *Daubert* or summary judgment motions in the seven months since the *Motion to Extend* was filed. The Court considers the opposition Plaintiff had already filed in response to Defendants' motions in its ruling on said motions. Without any evidence on the record to show that Plaintiff was deprived of, or sought and was denied leave to file, a supplemental opposition to Defendants' motions, Plaintiff's *Motion to Extend Submission Date* and *Motion for Expedited Hearing* are **DENIED AS MOOT.**[18]

### I. Federal Rule of Civil Procedure 26 and Treating Physicians

Under the Federal Rules of Civil Procedure certain disclosed experts must also issue a written report, prepared and signed by the witness.[19] Those experts are those that are "retained or specially employed to provide expert testimony."[20] The report must contain a complete statement of all opinions that witness will express, the basis and reasons therefor, and the facts or data considered by the witness in the formation of his opinions.[21] Other lay experts do not have to submit a written report, but rather the party must provide a summary disclosure including the subject matter of the witness's testimony and a summary of their facts and opinions.[22]

Treating physicians may be called as non-retained experts,[23] but then must only testify based on their personal knowledge from "examination, diagnosis, and treatment of [the plaintiff],

---

[18] R. Docs. 33 and 34.
[19] Fed. R. Civ. Proc. 26(a)(2)(B).
[20] *Id*.
[21] *Id*.
[22] Fed. R. Civ. Proc. 26(a)(2)(C).
[23] *Causey v. State Farm Mut. Auto. Ins. Co.*, No. 16-9660, 2018 WL 2234749, at *1 (E.D., La. May 16, 2018).

4

not from information acquired from outside sources."[24] If the physician's testimony is not limited to that knowledge from treatment of the plaintiff, "courts have found that the treating physician acts more like [a retained] expert and must submit a report under Rule 26(a)(2)(B)."[25] With regard to causation testimony, the treating physician's testimony "has been considered the province of expert testimony subject to the requirements of section (a)(2)(B)."[26]

## II. The *Daubert* Motion

Federal Rule of Evidence 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of opinion or otherwise, if: (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."[27]

In *Daubert*, the Supreme Court established a two-part test for judges to perform in determining the admissibility of expert testimony.[28] First, the court must determine whether the expert's testimony reflects scientific knowledge, is derived by the scientific method, and is supported by appropriate validation.[29] Therefore, the court must examine the expert's methodology. Second, the court must determine whether the testimony will assist the trier of fact in understanding the evidence.[30] "A district court should refuse to allow an expert witness to testify

---

[24] *Parker v. NGM Ins. Co.*, 2016 WL 3198613, at *3 (E.D. La. June 9, 2016) (Morgan, J.).
[25] *Id.* at *2.
[26] *Hooks v. Nationwide Hous. Sys., LLC*, 2016 WL 3667134, at *3 (E.D. La. July 11, 2016) (Barbier, J.) (citing *Rea v. Wisconsin Coach Lines, Inc.*, 2014 WL 4981803, at *2 (E.D. La. Oct. 3, 2014)); *See also Collett v. Weyerhaeuser Co.*, 512 F. Supp. 3d 665, 674 (E.D. La. 2021) (Fallon, J.) ("neither [treating] doctor has provided an expert report as required by Rule 26, and this alone would justify excluding them" with regard to causation testimony).
[27] Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579, 588, 113 S. Ct. 2786, 125 L.Ed.2d 469 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).
[28] *Daubert*, 509 U.S. at 588; *Hitt*, 473 F.3d at 148.
[29] *Daubert*, 509 U.S. at 590.
[30] *Daubert*, 509 U.S. at 591.

if it finds that the witness is not qualified to testify in a particular field or on a given subject."[31] However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue."[32] Courts should use caution, however, because "[v]igorous crossexamination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of questioning an expert's testimony.[33]

### III. General and Specific Causation in Toxic Torts

When expert testimony regards medical causation, a "rigorous" two-step process is used in examining the admissibility of causation evidence in toxic tort cases.[34] First, general causation must be established, followed by specific causation through reliable, admissible expert testimony.[35] This two-step process applies to *Deepwater Horizon* cases.[36] A plaintiff must establish both general and specific causation as the two "minimum facts necessary to sustain the plaintiff's burden in a toxic tort case."[37]

General causation regards whether the purported harmful substance "is capable of causing a particular injury or condition in the general population."[38] Such conclusions require identification of "the harmful level of exposure to a chemical."[39] As Judge Barbier noted, under Fifth Circuit precedent, "'[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are *minimal* facts necessary to

---

[31] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)); *Seaman v. Seacor Marine, LLC*, 564 F. Supp. 2d 598, 602 (E.D. La. 2008), aff'd, 326 F. App'x 721 (5th Cir. 2009).
[32] *Huss*, 571 F.3d at 452.
[33] *See Daubert,* 509 U.S. at 596.
[34] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).
[35] *Id*.
[36] *See, e.g. Griffin v. BP Expl. & Prod.*, No. 20-13444, 2022 WL 103243, at *2 (11th Cir. Jan. 11, 2022).
[37] *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 193, 198-99 (5th Cir. 1996); *Seaman v. Seacor Marin, LLC*, 326 F. App'x 721 (5th Cir. 2009).
[38] *Knight*, 482 F.3d at 351.
[39] *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 193, 198-99 (5th Cir. 1996).

sustain the plaintiffs' burden in a toxic tort case."[40] Per this standard, an expert's testimony will "not establish general causation" if they "provide[] no clue regarding what would be a harmful level of [chemical] exposure."[41] Ultimately, to show causation, a plaintiff "must prove, at a minimum, that exposure to a certain level of a certain substance for a certain period of time can cause a particular condition in the general population."[42]

Specific causation evidence is admissible only after admissible general causation evidence has been established.[43] A plaintiff seeking to prove specific causation must show that they were exposed to quantities known to cause the plaintiff's particular disease.[44] In addition, an expert must evaluate and eliminate alternative causes for a plaintiff's condition.[45]

### IV. Dr. Michael Meshad

Dr. Michael Meshad is identified as a treating physician who will testify as to specific causation of Ms. Duke's PCT recurrence. Defendants move this Court to exclude his expert opinion and limit his testimony to that of a treating physician and not as to specific causation based on the form of his expert disclosure, lack of report, and failure to comply with the standards necessary to survive a *Daubert* challenge. In opposition, Ms. Duke argues Dr. Meshad's disclosure is appropriate under the Federal Rules of Civil Procedure as a non-retained expert and will only testify as to facts he personally observed during treatment.

---

[40] *See Barkley v. BP Expl. & Prod. Inc.*, No. 13-995 (E.D. La. June 29, 2022); *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) (citing *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105, 1107 (8th Cir. 1996)) (emphasis added).
[41] *Seaman v. Seacor Marine*, 326 F. App'x 721, 726 (5th Cir. 2009). In another case, an expert witness's opinions were excluded because he failed "to answer questions regarding how much time [the plaintiff] spent scooping up oil, how, where, or in what quantity [the chemical] was used, how exposure levels would change once substance were diluted in seawater, or how [the plaintiff's] protective equipment would affect exposure." *McGill v. BP Expl. & Prod., Inc.*, 830 F. App'x 430, 433 (5th Cir. 2020).
[42] *Williams v. BP Expl. & Prod.*, No. 18-9753, 2019 WL 6615504, at *8 (E.D. La. Dec. 5, 2019) (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)).
[43] *Knight*, 482 F.3d at 351.
[44] *Allen*, 102 F.3d at 199.
[45] *Collett v. Weyerhaeuser Co.*, 512 F. Supp. 3d 665, 674 (E.D. La. 2021); *McGill v. BP Expl. & Prod. Inc.*, 830 F. App'x 430, 434 (5th Cir. 2020); *McNabney v. Lab. Corp. of Am.*, 153 F. App'x 293, 294 (5th Cir. 2005).

As discussed above, treating physicians who opine as to causation are required to comply with Rule 26(a)(2)(B). Without such disclosure, the purported expert will be limited in their testimony to only that which is contained in their records as a treating physician. Dr. Meshad's Rule 26(a)(2)(C) disclosure, as submitted by Ms. Duke, reflects his intent to opine as to specific causation. Even if read under the lense of the appropriate disclosure for such causation experts, Dr. Meshad's disclosure fails to meet the *Daubert* standard. Dr. Meshad's disclosure and the letters attached thereto do not causally relate Ms. Duke's recurrence to any sort of chemical exposure, but rather that her recurrence coincided with the timing of the oil spill. No information is given or cited as to the particular chemicals involved, nor the levels or frequency of exposure. There is no indication of what data or information Dr. Meshad relied upon in reaching his specific causation opinion outside of conjecture and temporal observance of Ms. Duke's condition and knowledge that the oil spill occurred.[46] Finally, there is no indication of consideration and elimination of other possible causes of Ms. Duke's condition recurring. All of these omissions preclude Dr. Meshad from testifying as an expert with regard to specific causation, and he will be precluded from testifying in that capacity. Instead, Dr. Meshad will be limited in his testimony to his records and observances during his treatment of Ms. Duke. Accordingly, the *Motion in Limine* is **GRANTED IN PART AND DENIED IN PART**.[47]

### V.     Dr. Kathleen Burns

As discussed above, Dr. Burns was retained to examine a potential relationship between exposure to chemicals in crude oil and exacerbation of PCT. In addition to several other areas of purported deficiency, Defendants argue that Dr. Burns's failure to identify a level of exposure to

---

[46] "Temporal connection between exposure to chemicals and an onset of symptoms, standing alone, is entitled to little weight in determining causation." *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 278 (5th Cir. 1998); *Johnson v. Arkema, Inc.*, 685 F.3d 452, 466-67 (5th Cir. 2012).
[47] R. Doc. 31.

hydrocarbons that would exacerbate or cause Ms. Duke's condition. Indeed, this Court has repeatedly emphasized the need for identification of exposure levels relevant to the alleged health condition.[48] Ms. Duke concedes that such information is not contained in the report, but urges this requirement should not be imposed against her as she suffers a recurrence of a pre-existing illness as opposed to a newly developed condition. Ms. Duke cites no authority to support her argument, and the Court is unaware of, and after diligent search, could not find any such authority. In fact, Judge Ashe opined, and this Court is inclined to agree, that a failure to identify the "dose of the toxic chemicals necessary to cause any of the complained-of health effects weighs heavily in favor of exclusion."[49] Relying on the Fifth Circuit's holding that identification of the harmful level of exposure to a chemical is a minimal fact necessary to establish a plaintiff's burden in toxic tort cases, Judge Ashe excluded an expert's testimony for failure to identify the level of exposure needed to establish a plaintiff's health condition.[50]

This Court's reasoning parallels that of Judge Ashe. This Court has held likewise in the past in similar B3 cases, and Ms. Duke has provided no authority to cause the Court to reconsider or reevaluate its reasoning with regard to the necessity of identification of a certain level of exposure necessary to cause the complained-of health condition. Experts on general causation must identify the dose of exposure known to cause the harmful condition complained-of. Ms. Duke's assertion that this does not apply to recurrent conditions that were previously in remission does not allow her to circumvent that requirement. Ms. Duke points to the absence of data regarding the

---

[48] *See, e.g., Harrison v. BP Expl. & Prod.*, No. 17-4346, 2022 WL 2355545 (E.D. La. June 30, 2022); *Backstrom v. BP Expl. & Prod.*, No. 17-3209, 2022 WL 2342390 (E.D. La. June 29, 2022); *Baggett v. BP Expl. & Prod., Inc.*, No. 17-3030 (E.D. La. Sept. 13, 2022), R. Doc. 82; *Barkley v. BP Expl. & Prod. Inc.*, No. 13-995 (E.D. La. June 29, 2022); *Johns v. BP Expl. & Prod. Inc.*, No. 17-3304, 2022 WL 1811088 (E.D. La. June 2, 2022); *Murray v. BP Expl. & Prod. Inc.*, No. 17-3582, 2022 WL 1811138 (E.D. La. June 2, 2022); *Coleman v. BP Expl. & Prod.*, No. 17-4158, 20220 WL 2314400 (E.D. La. June 28, 2022).
[49] *Johns*, 2022 WL 1811088 at *6.
[50] *Id.* (citing *Allen v. Pennsylvania Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).

levels of chemicals present near where she resided, While the Court is sensitive to this lack of data, there is no indication that BP had a duty to do such testing or monitoring as Ms. Duke suggests. The lack of data does not absolve Ms. Duke of identifying the level of exposure necessary to cause her health condition to recur.

Ms. Duke's next argument similarly attempts to circumvent the general causation requirement. Ms. Duke appears to argue that the 2012 Declaration by Dr. Jessica Herzstein offered in support of the *Deepwater Horizon* Medical Benefits class Action Settlement Agreement ("MSA") absolves her of the need to further prove general causation.[51] That Declaration states, in pertinent part to Ms. Duke's argument, "contact with oil and/or dispersants cause [certain acute and chronic conditions] if there were exposure to sufficient amounts of such substances for a sufficient duration of time."[52] This argument is not new to the Court. At least two judges, one in another section of this Court and one in Florida, have rejected this argument.[53] Judge Morgan reasoned, and this Court agrees, that the MSA is "a product of compromise to be enforced according to its plain terms, the same as any contract. Significantly, nothing in the Settlement Agreement indicates that BP stipulated to a finding of general causation for anything other than this limited settlement framework, and nothing in the Settlement Agreement otherwise establishes general causation for these claims."[54]

Dr. Burns's report fails to establish the minimal fact necessary to carry Ms. Duke's burden in this toxic tort case because it fails to identify a harmful level of exposure to hydrocarbons to cause her health condition to recur. Absent such information, her opinion cannot pass muster under

---

[51] Declaration of Dr. Jessica Herzstein, MDL 2179, R. Doc. 7112-7 (E.D. La. Aug. 13, 2012).
[52] *Id*. at Par. 14.
[53] *Lee v. BP Expl. & Prod.*, No. 18-10381, 2020 WL 6106889 (E.D. La. Sept. 29, 2020) (Morgan, J.); *In re Deepwater Horizon Belo Cases*, 3:19-cv-00963-MCR-GRJ, R. Doc. 52 (N.D. Fla. Dec. 12, 2019) (Rodger, J.).
[54] *Lee*, 2020 WL 6106889 at*5.

Fifth Circuit precedent. Accordingly, the motion to exclude Dr. Burns's general causation opinion is **GRANTED**.[55]

### VI. Motion for Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[56] The court must find "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under the governing substantive law."[57] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact and all reasonable inferences are drawn in favor of the nonmoving party.[58] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[59] However, "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[60]

The exclusion of Dr. Burns's report and limitation of Dr. Meshad's testimony leaves Ms. Duke with no evidence to support her general or specific causation argument. Consequently, Ms. Duke cannot point to a genuine issue of material fact regarding the cause of her injuries. Accordingly, the *Motion for Summary Judgment* is **GRANTED**.

---

[55] R. Doc. 30.
[56] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).
[57] *Voelkel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at *5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc*., 882 F.2d 993, 996 (5th Cir. 1989)).
[58] *Celotex,* 477 U.S. at 323.
[59] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398–99 (5th Cir. 2008).
[60] *Galindo v. Precision Am. Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' *Motion to Exclude the Causation Opinions of Dr. Michael Meshad* is **GRANTED IN PART and DENIED IN PART.**[61]

**IT IS FURTHER ORDERED** that Defendants' *Motion to Exclude the Causation Opinions of Kathleen Burns, Ph.D.* is **GRANTED.**[62]

**IT IS FURTHER ORDERED** that Defendants' *Motion for Summary Judgment* is **GRANTED.**[63]

**IT IS FURTHER ORDERED** that Plaintiff's *Motion to Extend Submission Deadlines* and *Motion to Expedite Hearing* are **DENIED AS MOOT**.[64]

**IT IS FURTHER ORDERED** that all claims of the Plaintiff against Defendants, BP Exploration & Production Inc. and BP America Production Company, are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this __31st__ day of March 2023.

Greg Gerard Guidry
United States District Judge

---

[61] R. Doc. 31.
[62] R. Doc. 30.
[63] R. Doc. 32.
[64] R. Docs. 33 and 34.